N4R4FONS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                22 Cr. 192 (JSR)

MOISES FONTANEZ,
                                        Sentence
                 Defendant.

------------------------------x

                                  New York, N.Y.
                                  April 27, 2023
                                  4:15 p.m.

Before:

                   HON. JED S. RAKOFF,

                                   District Judge

                      APPEARANCES

DAMIAN WILLIAMS
    United States Attorney for the
    Southern District of New York
DOMINIC A. GENTILE
    Assistant United States Attorney

Law Office of Evan L. Lipton
    Attorneys for Defendant
BY:  EVAN LIPTON


Also Present:
Dagoberto Orrantia, Interpreter (Spanish)

1          (Case called)
2          MR. GENTILE:  Good afternoon, your Honor.  Dominic
3   Gentile for the United States.
4          MR. LIPTON:  Good afternoon, Judge Rakoff.  Evan
5   Lipton on behalf of Moises Fontanez, who is standing beside me
6   in the courtroom.
7          THE COURT:  Good afternoon.  Please be seated.
8          All right.  We are here for sentence, and the first
9   item is to calculate the guideline range.  The probation office
10  says a total offense level of 27, and a criminal history
11  category of Roman numeral II, for a guideline range of 78 to 97
12  months on Count 14, plus a mandatory consecutive 84 months on
13  Count 15.  Now, I know the plea agreement had a somewhat
14  different calculation.  But my question to both counsel is
15  whether you agree now with the probation office's calculation?
16         MR. GENTILE:  Your Honor, while the government agrees
17  with probation's calculation of the guidelines, it will
18  continue to recommend a guideline sentence within the range
19  calculated in the party's agreement.
20         THE COURT:  That's fine.  The likelihood is high that
21  I'm not going to give a sentence above what was the original
22  plea agreement in any event.
23         What's the defense's position?
24         MR. LIPTON:  I'm sorry.  Should I stay seated?
25         THE COURT:  Whatever you prefer.

1          MR. LIPTON:  I do not have a legal disagreement with
2    the guideline calculation in the PSR.
3          THE COURT:  So I will adopt the calculation of the
4    presentence report and also adopt the presentence report in its
5    entirety.
6          Now, we turn to what is of much greater moment which
7    is calculating what the sentence should be on Section 3553 of
8    Title 18.  So before we hear from defense counsel, let me ask
9    the government counsel, and you'll have a more full opportunity
10   to discuss this later, but where do you place this defendant in
11   terms of overall culpability compared to the other defendants
12   that I already sentenced?
13         MR. GENTILE:  Your Honor, I believe during the last
14   proceeding we had, the Court asked the same question, and my
15   response then was that defendant, like this defendant ranges
16   high up in the hierarchy of this gang.  I don't want to use the
17   word "tied," but his conduct very closely resembles that
18   defendant.  So I would put this defendant as number three or
19   number four in the order.
20         THE COURT:  All right.  Now, I want to hear first from
21   defense counsel, then from government counsel, then from the
22   defendant if he wishes to be heard.
23         MR. LIPTON:  I would like to speak from the podium, if
24   I may.
25         THE COURT:  Sure.

1    MR. LIPTON:  Good afternoon, Judge.
2    THE COURT:  Good afternoon.
3    MR. LIPTON:  Good afternoon Fontanez family.  I would
4    like to begin by acknowledging Mr. Fontanez's family, who is
5    seated here in the second row.  I would particularly like to
6    acknowledge Mr. Fontanez's mother, if you could please raise
7    your hand, and his sister who is sitting behind her.  He has a
8    very close relationship with his mother and sister.  And as I
9    said in my papers, and I'll return to this, the fact of
10   separation upon likely deportation at the end of the sentence
11   has been one of the most difficult things for both Mr. Fontanez
12   and his family to deal with and to grasp.
13   THE COURT:  What is striking which comes across from
14   your submission is that this defendant is essentially played
15   two roles.  He was very respectful and loving person with
16   respect to many family members and others, and then he engaged
17   in utterly despicable behavior in his role as a member of this
18   gang.  So I will give him credit for the former, but I also
19   have to take into account the latter.
20   MR. LIPTON:  And, of course, you do.  There is nothing
21   I'm going to say today that should take away from the
22   seriousness of this offense or Mr. Fontanez's acceptance of
23   responsibility for having participated in it.  What I have to
24   say today is in terms of mitigation and speaks to the
25   appropriate punishment for Mr. Fontanez.  And I know from

1  appearing before your Honor, that you very much take into
2  account an individual's personal history and characteristics
3  when reaching an applicable sentence.  And it's a very specific
4  set of circumstances that led to where Mr. Fontanez is today,
5  and I tried to point it out in my sentence memo.
6      This is a young man, mentally ill, diagnosed with
7  bi-polar disorder during his years of high school in the
8  Dominican Republic, who then came here at age 16.  From the age
9  of 17 to 20, when he was incarcerated, he was untreated for his
10 mental illness and was participating in a mix of people in the
11 neighborhood that were engaged in what could only be called
12 gang warfare that had been going on for years before he got
13 there.  And what strikes me as I think about this case, and I
14 think about Moises, is that for somebody like him to arrive
15 here at that place and that time and to resist those forces is
16 something that takes a certain amount of strength and
17 preparation.  Moises didn't have those things.  Because of his
18 mental illness, because of his lack of language, because of his
19 youth, didn't have the skills to make the right decision and
20 made a series of wrong decisions.  And he is going to be
21 punished harshly for it.  There is a mandatory minimum of seven
22 years in this case.  He is 23 years old.  He turned 23 on April
23 11th, just a couple of weeks ago.  Seven years is an extremely
24 long time for anybody but especially a young man.  And it's
25 even longer when you take into account -- I think I cited this

1   in my memorandum as well and I don't mean to repeat everything
2   I said there.  He has spent time in two institutions that
3   personally, I feel are a stain on our city, Rikers Island and
4   the MDC.  And the way he was treated at Rikers Island, he
5   wasn't protected at Rikers Island.  The guards don't run that
6   institution and things were not set up in the way to protect
7   people who were involved in this violence before they went in
8   and he was attacked for that.  And his jaw was broken, and he
9   spent time in that facility with that disability -- something
10  that I don't think is permanently fixed even today.
11           After that happened -- and this was thanks to his
12  state lawyer that was appointed there -- he did begin to get
13  some treatment at Rikers for his mental illness.  He received
14  medication and counseling, that continued while he was at
15  Rikers.  When he was transferred into federal custody, he did
16  not continue to receive counseling, but he has remained
17  medicated and it has changed his disposition.  And I can tell
18  you that personally because I was there the first day he was
19  brought over to the federal system.  I had trouble
20  communicating with him.  His body language was stiff.  He was
21  unable to remember or discuss certain things.
22           As we spent more time together and as he spent more
23  time in the Essex facility in particular, his disposition
24  changed.  The things that he is talking about changed, and he
25  was even enrolled in this program at Essex, a GED program.  But

 1   what struck me about it, when I went to the jail, and I asked
 2   why is my guy in a different uniform?  Is that punishment?  No,
 3   it's not punishment.  They put the guys who are in GED in a
 4   particular place, in particular uniforms to show what they were
 5   doing.  He didn't finish that program only because he was
 6   transferred to the MDC, just as a result of how they push
 7   population around.  But my point is that his time in jail, I
 8   think is indicative of how he is going to act in the future at
 9   least as much as his time out on the street.  That is because
10   he has become an adult in jail.  He began to become treated for
11   mental illness, and he has been removed from the place where
12   this was happening, and he is not going back.  He will not be
13   going back to the Bronx.  He will not be part of this
14   Trinitario feud that's been going on for more than a decade
15   now, I believe.  He is going to be in the Dominican Republic,
16   and he needs to make a new life for himself.  I talked to him
17   about this over the past few months.  I talked to him about
18   what he can do to put himself in a position where he can make a
19   life for himself.
20           One thing that he has started to do, in addition to
21   getting a GED, he has been learning English.  He is not going
22   to use it today because of the stress of today's proceeding.
23   But I'm able to communicate with him in English, and I
24   discussed with him how this could be helpful in the Dominican
25   Republic, given the high degree of business and tourism that

1    goes back and forth between the two countries.

2              I really think the question before the Court here is
3    what is sufficient but not greater than necessary for the
4    purposes of punishment here.  Deterrence is accomplished, he is
5    not going to go back to that place, ever.  He is not ever going
6    back there.  And punishment, retribution has also -- well, will
7    be accomplished through the seven year-minimum sentence in this
8    case.  And I make that point both based on just the amount -- I
9    said it already, the amount of time and the amount of time in
10   the way that it's been served.

11             I want to make one correction to the introduction of
12   my sentence memorandum.  I give the wrong calculation for the
13   number of months that he has been incarcerated.  In the
14   introduction I wrote 23 months.  I then cited the date
15   correctly in a footnote.  He has been incarcerated since
16   December 8, 2020, which is closer to 28 months than it is 23
17   months.  Unless the Court has any questions, I do note that
18   Mr. Fontanez is prepared to --

19             THE COURT:  My only question that relates to that last
20   point, what portion of that was federal and what portion of
21   that was state, if you know?

22             MR. LIPTON:  I have that in my memo.  That question
23   was, when was he brought over to the federal system?

24             THE COURT:  Yes.

25             MR. LIPTON:  One moment.  March 31, 2022.

1            THE COURT:  Because he gets automatic credit for the
2   federal.  I can take account, of course, in framing my sentence
3   to the state time as well, and I usually do, but it's not an
4   automatic credit in the way the federal incarceration is.
5            Let me hear from the government and then we'll hear
6   from the defendant, if he wishes to be heard.
7            MR. GENTILE:  Thank you, Judge.
8            I just want to address the point that defense counsel
9   made first regarding the defendant's purported mental illness.
10  I don't doubt that he has issues.  But what I think is
11  important for the Court to note, and I only bring this up
12  because defense counsel makes such a point about it, is that
13  defendant has been caught on jail calls when he was in state
14  custody speaking to other gang members on the outside telling
15  them how they could fake illnesses to get special treatment.
16  So I think that's just something to note for the Court.  I'm
17  not sure where the real line begins and where the fake line
18  ends or vice versa.
19           But that aside, Judge, further to the Court's inquiry
20  of the government initially, what distinguishes this defendant
21  from the other defendants in this case except perhaps for the
22  gang's leader and maybe one other, is that this defendant was
23  the person other gang members turned to when they decided to
24  use violence.  He was one of if not the main enforcer for the
25  gang.  He was the person they turned to when they wanted

1   somebody shot at or somebody assaulted, which is saying
2   something when speaking about such a gang so prone to extreme
3   violence.  The Shooting Boys, they earned that name.  This is
4   evidence not only by the violent acts we described in our
5   sentencing submission, your Honor.  But also in his prior
6   conduct before being arrested including his 2019 conviction for
7   robbery where defendant didn't only rob the victim, he
8   assaulted him even though the victim offered no -- no
9   resistance to his robbery.
10          His predilection for violence is also evidence in the
11  underlying conduct or the conduct in the charged offenses.  The
12  July 6, 2020, New Jersey home invasion I think is very telling,
13  Judge, and we included a photo in our sentencing submission to
14  impart upon the Court just how frightening something like that
15  must have been for the occupants of that home to have several
16  gang members creeping around outside your home, entering it in
17  the dead of night, tying up the male occupant, and pistol
18  whipping him and beating him.  Now, not every gang member was
19  armed with a firearm during that incident, but the defendant
20  was.  Not every gang member assaulted the victim in the house,
21  the defendant did.  And not every gang member who assaulted the
22  victim pistol whipped him, the defendant did.
23          And when the gang's leader, Andrew Done required a
24  gang member to retaliate against The Shooting Boys rivals, one
25  of people he called upon was the defendant.  And that's how the

1   July 21, 2020, shooting unfolded.  The defendant and another
2   gang member, he is named in the PSR, Juan Sosaposte, got on a
3   motorcycle, drove to East 180th Street in the Grand Concourse
4   and shot indiscriminately at a group of people who had
5   absolutely nothing to do with gang, being gang membership or
6   gang rivals, they were just innocent people walking in and out
7   of a bodega on the corner of that location.  And to no great
8   surprise, the only person injured was an innocent bystander who
9   happened to be visiting family from Massachusetts, and we
10  include a photo of that victim as well in our submission.
11            It's this type of behavior, your Honor, that's
12  dominated the defendant's actions for most of his life, and
13  without a doubt he is a very young man, but it does not portend
14  well for future conduct.  Even when driving a stolen car up in
15  Dutchess County, a car loaded with drugs, a car that was stolen
16  from a home invasion robbery, rather than using sound or
17  sounder judgment, the defendant led the police on a high-speed
18  chase for 22 miles.  Again, to no great surprise, people were
19  injured.  Fortunately, it wasn't innocent bystanders, and,
20  unfortunately, it was the defendant himself and other occupants
21  of his vehicle.
22            The only other thing I would bring to the Court's
23  attention, Judge, is the defendant's narcotics distribution
24  activities are not insignificant.  He is being held responsible
25  for distributing at least 1 kilogram of heroin, less than

N4R4FONS

1  3 kilograms.  It includes the heroin found in that stolen van,
2  and the heroin that the defendant stole with other gang
3  members, from a rival drug dealer.
4         And for those reasons, your Honor, we think this
5  defendant warrants a sentence within the stipulated guidelines
6  range, Judge.
7         THE COURT:  All right.  Let me hear from the
8  defendant, if he wishes to be heard.
9         THE DEFENDANT:  Your Honor, with respect, I want to
10 apologize for my behavior and apologies to my family and to all
11 those who love me.  I never wanted to harm anyone.  When I
12 arrived in this country, I was 16 years old.  And when I
13 arrived I had a lot of freedom.  I did not know what to do.
14 And at the time that I have been in jail I had gone through
15 much, my family also.  I thought I was going to be one of the
16 people who died around me in that jail.  I still feel
17 frustrated.  I cannot even eat well.  I would like to be next
18 to my sister who is growing up without her father, the same as
19 I.  And my mother who is there all alone.  I don't think that I
20 will be that same person that I was when I was outside.  If I
21 were to be that same person again, I would wish upon me the
22 death penalty.  I would like for you to have pity on me and on
23 my family.  I've been in lockdowns because of the lack of
24 officers.  I wanted to do my GED.  I was going to study.  I was
25 changed prisons for no reason.  I was doing fine in

1   Westchester, and I only ask you to have pity on me.
2              THE COURT:  Thank you very much.
3              MR. LIPTON:  Judge, if I may just offer one fact in
4   response to Mr. Gentile.
5              THE COURT:  Yes.
6              MR. LIPTON:  Just in terms of the idea or suggestion
7   that Mr. Fontanez is malingering mental illness, the PSR cites
8   documents from the Dominican Republic that predate his travel
9   to the U.S. that diagnosed him with bipolar disorder.
10             THE COURT: All right.  I accept that.  And that
11  doesn't mean that he did not make mistake in encouraging others
12  to apparently malinger, but I figure it's a side show compared
13  to his own difficulties, which I accept are part of the
14  problem.
15             As always in these cases, my heart goes out to his
16  mother and his relatives because they who love him are in many
17  ways the prime victim of his misconduct.  They are among the
18  prime victims.  Because he had the support of people who
19  generally wished him the best with all his difficulties and all
20  his unfortunate circumstances in his early life, and they are
21  now being further deprived of his better side.
22             I think the government has made a strong argument for
23  why this defendant should be treated among the higher-level
24  persons in this multi-defendant conspiracy.  His involvement in
25  violence, his involvement in, if you will, unnecessary violence

1   in the sense of it went well beyond what this gang warfare
2   involved and placed innocent people in jeopardy, and their
3   voices must be heard here today as well.  So after taking
4   account of all the factors under Section 3553, I think the
5   proper sentence is a total of 11 years as follows:  48 months
6   Count 14 to be followed by the mandatory 84 months on Count 15,
7   for a total of 132 months, to be followed by three years of
8   supervised release concurrent on both counts on terms I'll get
9   to in a moment.  No fine will be imposed because this defendant
10  is not in a position to pay any meaningful fine now or in the
11  foreseeable future.  There is, however, a mandatory $200
12  special assessment that must be paid.
13            Is the government seeking any forfeiture?
14            MR. GENTILE:  It is not, Judge.
15            THE COURT:  Very good.
16            With respect to supervised release which may become
17  moot because of the immigration issues but never the less, they
18  will be imposed first the mandatory conditions that he not
19  commit any other federal state or local crime, that he not
20  unlawfully possess a controlled substance within, that within
21  15 days of his release from custody he submit to a drug test to
22  be followed by two periodic drug tests thereafter and that he
23  cooperate in the collection of DNA.  There will also be imposed
24  the standard conditions of supervised release 1 through 12.
25  They appear on the face of the judgment and will be gone over

1  as well with the defendant when he reports to begin his period
2  of supervised release.
3          And, finally, there are the special conditions, first,
4  that he participate in an outpatient mental health program on
5  the standard terms and conditions.
6          Second, that he not associate or interact in any way
7  with any gang member or associates including through social
8  media websites and this applies particularly to members and
9  associates The Shooting Boys and Trinitarios gang.  And that he
10 not frequent neighborhoods known as controlled by the
11 Trinitarios gang or any of its subsets and without the
12 permission of the probation office.
13         Next, that he must obey the immigration laws, comply
14 with the directives of the immigration authorities.
15         Next, that he must provide the parole officer with
16 access to any requested financial information.  And, finally,
17 that he be supervised by the district of his residence.
18         Now, before I advise the defendant of his right of
19 appeal, is there anything else that either counsel need to
20 raise to the Court?  Anything from the government?
21         MR. LIPTON:  Your Honor, the government at this time
22 moves to dismiss all open counts.
23         THE COURT:  That motion is granted.
24         MR. LIPTON:  I just ask for a recommendation to
25 designation somewhere close to the tristate area so that his

1  family is able to visit him.
2          THE COURT:  Yes.  I will certainly recommend that.  As
3  I'm sure you already told your client, I cannot order that, but
4  I will recommend it.
5          So, Mr. Fontanez, you have a right to appeal this
6  sentence.
7          Do you understand that?
8          THE DEFENDANT:  Yes.
9          THE COURT:  And if you can't afford counsel for any
10 appeal, the Court will provide one for you free of charge.
11         Do you understand that?
12         THE DEFENDANT:  Yes.
13         THE COURT:  Very good.  Thanks a lot.
14         (Adjourned)
15
16
17
18
19
20
21
22
23
24
25